[D.I. 61]
[D.I. 63]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| EAST COAST TRANSPORT, LLC,<br><br>        Plaintiff,<br><br>  v.<br><br>JJS TRANSPORTATION & DISTRIBUTION CO., et al.,<br><br>        Defendants. | Civil No. 22-1123 (AMD) |

**ORDER**

      This matter comes before the Court by way of motion [D.I. 61] of Plaintiff, East Coast Transport, LLC, seeking sanctions against Defendant JJS Transportation & Distribution Co. (hereinafter, "JJS") for JJS' failure to retain counsel and participate in this litigation. Also before the Court is a motion [D.I. 63] of Defendant East Penn Manufacturing Co. (hereinafter, "East Penn") similarly seeking sanctions against JJS for JJS' failure to participate in this case. JJS has not filed opposition to either motion. Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of the undersigned on May 11, 2022. (Notice, Consent, and Reference of a Civil Action to a Magistrate Judge [D.I. 21].) The Court has considered the submissions of the parties and decides this

matter pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth herein and for good cause shown, the Court shall grant sanctions against JJS in the form of striking JJS' answer and counterclaims and directing the Clerk to enter default against JJS.

Plaintiff initiated this action on March 2, 2022 by filing a complaint [D.I. 1] against both JJS and East Penn arising out of a contract for the transportation of cargo. The District Court issued an Order to Show Cause on the same date because the complaint failed to demonstrate subject matter jurisdiction. (Order [D.I. 3], Mar. 2, 2022.) Plaintiff subsequently filed an amended complaint [D.I. 4] to address the jurisdictional deficiency, and the District Court discharged its Order to Show Cause on March 25, 2022. (Text Order [D.I. 10], Mar. 25, 2022.) In the amended complaint, Plaintiff avers that it is a "third-party logistics provider" that entered into contracts with JJS "to arrange for the transportation of certain cargo [] from marine terminals or other locations in New Jersey to East Penn or other consignees." (Am. Compl. [D.I. 4], p. 2, ¶¶ 6-7.) Plaintiff further avers that it paid independent motor carriers for these deliveries and issued invoices to JJS for payment, but JJS has purportedly failed to pay invoices for approximately 180 deliveries of cargo. (*Id.* at p. 2, ¶¶ 9-10.) Plaintiff alleges that these unpaid invoices total $159,780.00.

2

(*Id.* at p. 2, ¶ 12.) Given these allegations, the amended complaint contains claims against JJS for breach of contract and quantum meruit. (*Id.* at p. 3, ¶¶ 13-21.) In addition, Plaintiff asserts in the amended complaint a third count against both JJS and East Penn for unjust enrichment, alleging therein that "Defendants are jointly and severally liable for payment to East Coast for the value of the services rendered, as both Defendants were the beneficiaries of the Deliveries." (*Id.* at p. 4, ¶ 26.)

On April 12, 2022, Defendant East Penn filed an answer to the amended complaint and crossclaims against JJS. (Def. East Penn Manufacturing Co.'s Answer to Pl. East Coast Transport, LLC's First Am. Compl. with Affirmative Defenses and Crossclaims [D.I. 13].) In the crossclaims, East Penn contends that if Plaintiff is entitled to recovery, then JJS is either solely liable or jointly liable with East Penn to Plaintiff. (*Id.* at p. 8, ¶¶ 2-3.) On April 29, 2022, JJS filed an answer to the amended complaint and crossclaims, which also contained counterclaims against Plaintiff for tortious interference with existing contractual relationships and prospective business relationships and conversion. (Def. JJS Transportation & Distribution Co., Inc.'s Answer to First Am. Compl. with Affirmative Defenses, Counterclaims, Crossclaims and Answer to Crossclaims [D.I. 17].)

3

After the parties participated in some discovery, on November 18, 2022, Thomas J. Monroe, Esquire, of Certilman Balin Adler & Hyman, LLP, filed a motion to withdraw as counsel for JJS. (*See* Notice of Motion for Leave of Court to Permit Thomas J. Monroe to Withdraw as Counsel for Defendant JJS Transportation & Distribution Co. [D.I. 36].) The Court scheduled a telephonic hearing on the motion to withdraw for February 2, 2023 and directed counsel for JJS to mail a copy of the Order scheduling the hearing to a representative of JJS. (*See* Scheduling Order [D.I. 39], Jan. 5, 2023.) The Order further provided that "[a]ll counsel, as well as a representative of Defendant JJS Transportation & Distribution Co., shall appear at the hearing." (*Id.*) On February 2, 2023, the Court conducted oral argument on the motion to withdraw, at which time Joseph Sarcona appeared as president of JJS and counsel for JJS withdrew its motion to be relieved as counsel. (Order [D.I. 42], Feb. 2, 2023, p. 1.) The Court thus dismissed the motion to withdraw as counsel and directed JJS to provide responses to outstanding discovery requests by no later than March 3, 2023. (*Id.*) In addition, the Court expressly advised JJS' president during the hearing that failure to comply with the Court's Order could result in JJS' answer and counterclaims being stricken.

On September 1, 2023, counsel for JJS renewed its application to be relieved as counsel on the basis that JJS' president, Mr. Sarcona, failed to cooperate and communicate with counsel. (*See* Letter from Thomas J. Monroe, Esq. [D.I. 52], Sept. 1, 2023.) The Court scheduled a telephonic hearing on the renewed request to be relieved as counsel for October 3, 2023 and again directed that a representative of JJS appear for the telephonic hearing. (Order [D.I. 54], Sept. 13, 2023.) As demonstrated by an Affidavit of Service [D.I. 56] filed by JJS' counsel, a copy of the Order was sent to JJS on September 15, 2023; however, a representative of JJS failed to appear at the October 3, 2023 hearing. (Order [D.I. 58], Oct. 5, 2023.) The Court thus entered an Order granting counsel leave to withdraw as counsel for JJS and providing JJS thirty days to seek new counsel. (*Id.*) The Order further stated that "[i]f new counsel does not enter an appearance on JJS' behalf by November 6, 2023, Plaintiff may file an appropriate motion for JJS' failure to participate in this litigation." (*Id.*) On October 5, 2023, the firm of Certilman Balin Adler & Hyman LLP filed an affidavit indicating that a representative of JJS was served with a copy of the Court's Order granting withdrawal of counsel. (See Aff. of Service [D.I. 59], Oct. 5, 2023.) JJS did not have new counsel enter an appearance on its behalf and has not otherwise

filed a submission setting forth its efforts to retain counsel or its intention of participating in this case.

Plaintiff and East Penn now request sanctions for JJS' failure to participate in this litigation. Initially, the Court notes that the specific relief requested by Plaintiff and East Penn is unclear. Plaintiff's and East Penn's notices of motion and proposed forms of order state only that the moving parties seek default against JJS. (*See* Notice of Motion [D.I. 61]; Proposed Order [D.I. 61-6]; Def. East Penn Manufacturing Co.'s Notice of Motion [D.I. 63]; Proposed Order [D.I. 63-2].) Similarly, the titles of Plaintiff's and East Penn's briefs note only that the motions seek entry of default against JJS. (Pl.'s Br. in Supp. of its Mot. for Default against Def. JJS Transport and Distribution (hereinafter, "Pl.'s Br.") [D.I. 61-1]; Def. East Penn Manufacturing Co.'s Mem. of Law in Supp. of Mot. for Default Against Def. JJS Transportation & Distribution Co. (hereinafter "East Penn's Br.") [D.I. 63-1].) By contrast, Plaintiff's brief asks the Court to "enter a default judgment in Plaintiff's favor and against JJS Transportation & Distribution on both Plaintiff's affirmative claims and JJS' Counterclaim against East Coast." (Pl.'s Br. at p. 4.)[1] Likewise, East Penn's brief requests that the Court "enter default judgment in

---

[1] The Court assumes that Plaintiff intends to seek dismissal of JJS' counterclaim and not default judgment on the counterclaim.

6

defendant East Penn Manufacturing Co.'s favor and against defendant JJS Transportation & Distribution on defendant East Penn Manufacturing Co.'s crossclaims against defendant JJS Transportation & Distribution." (East Penn's Br. at pp. 7-8.)

"Plaintiffs are not entitled to an entry of default judgment as of right" as "[a] defendant's failure to appear or answer does not vitiate" the Court's "responsibility to examine the complaint" and, in its discretion, "grant or deny entry of default judgment." *Omniwind Energy Sys., Inc. v. Redo*, No. 14-5976, 2015 WL 790101, at *10 (E.D. Pa. Feb. 24, 2015); *see also Paniagua Grp., Inc. v. Hosp. Specialists, LLC*, 183 F. Supp. 3d 591, 600 (D.N.J. 2016) (same). Moreover, "[w]hile the factual allegations of the complaint 'will be taken as true' on a motion for default judgment, the amount of damages must still be proven with certainty." *Salins v. EMR Tech. Sols., Inc.*, No. 21-20125, 2023 WL 7386844, at *8 (D.N.J. Nov. 8, 2023) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). Here, neither Plaintiff nor East Penn provides any specific or sufficiently detailed information or case law to support their claims as to JJS' liability or to support entry of judgment in a specific amount. Furthermore, with respect to Plaintiff's claim for unjust enrichment against both JJS and East Penn, Plaintiff alleges that these defendants are jointly and severally liable, and a motion for default judgment directed to this claim would

7

be premature at this time. *See Alpine Fresh, Inc. v. Jala Trucking Corp.*, 181 F. Supp. 3d 250, 258 (D.N.J. 2016)("Where the motion for default judgment is made as to only one defendant in a multi-defendant case, 'the preferred practice is for the court to withhold granting default judgment until the action is resolved on its merits against non-defaulting defendants: if plaintiff loses on [the] merits, the complaint should then be dismissed against both defaulting and non-defaulting defendants.'")(quoting *Animal Sci. Products, Inc. v. China Nat. Metals & Minerals Imp. & Exp. Corp.*, 596 F. Supp. 2d 842, 849 (D.N.J. 2008)). With respect to East Penn's crossclaims, East Penn does not explain the propriety of entering default judgment at this time when its crossclaims are predicated upon Plaintiff's entitlement to recovery, which has not yet been adjudicated. Consequently, for all of these reasons, the Court construes the instant motions as seeking entry of default only, and not default judgment, at this time.

"Both the Federal Rules of Civil Procedure and a court's inherent authority to control its docket empower a district court to dismiss a case as a sanction for failure to follow procedural rules or court orders." *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013). The Third Circuit, however, has stated that "dismissals with prejudice or defaults are drastic sanctions, termed 'extreme' by the Supreme Court,

8

and are to be reserved for comparable cases." *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 867–68 (3d Cir. 1984) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). Indeed, "cases should be decided on the merits barring substantial circumstances in support of the contrary outcome" and there is a "strong policy favoring decisions on the merits[.]" *Hildebrand v. Allegheny Cnty.*, 923 F.3d 128, 132 (3d Cir. 2019).

The Third Circuit has thus set forth the following factors that a court should consider when deciding whether to impose a sanction that deprives a party of the ability to proceed on the merits in a particular case (hereinafter, the "*Poulis* factors"):

(i) the extent of the party's personal responsibility;

(ii) the prejudice to the adversary;

(iii) a history of dilatoriness;

(iv) whether the conduct of the party or the attorney was willful or in bad faith;

(v) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and

(vi) the meritoriousness of the claim or defense.

*Poulis*, 747 F.2d at 868-69 (emphasis omitted); *see also United States v. Brace*, 1 F.4th 137, 143 (3d Cir. 2021) (noting that *Poulis* factors were properly considered when striking a brief in

9

opposition to summary judgment motion); *Knoll*, 707 F.3d at 409 (noting that "we have required a *Poulis* analysis when a district court imposes sanctions that are tantamount to default judgment because they inevitably lead to liability for one party"). "However, a *Poulis* analysis is unnecessary when a litigant's willful conduct prevents the case from going forward, thereby giving a district court no option but dismissal." *Dover v. Diguglielmo*, 181 F. App'x 234, 238 (3d Cir. 2006)(citing *Spain v. Gallegos*, 26 F.3d 439, 454–55 (3d Cir. 1994); *Guyer v. Beard*, 907 F.2d 1424, 1429–30 (3d Cir. 1990)).

Here, JJS' willful conduct has stalled this case, thus warranting dispositive sanctions without analysis of the *Poulis* factors. JJS' president was present during the hearing on counsel's initial application to withdraw as counsel, at which time the Court expressly stated that failure to comply with a court order could result in striking of JJS' answer and counterclaim. JJS thereafter failed to communicate with its attorney, resulting in counsel's renewed application to withdraw. JJS then failed to appear for a hearing on its counsel's renewed motion to withdraw, despite a court order that required a representative of JJS to appear and contained a warning that **"THE FAILURE OF A PARTY OR ATTORNEY TO OBEY THIS ORDER MAY RESULT IN THE IMPOSITION OF SANCTIONS UNDER FED. R. CIV. P. 16(f)."** (Order [D.I. 54], Sept. 13, 2023; Order [D.I.

58], Oct. 5, 2023.) Moreover, JJS was given thirty days to seek new counsel and was warned that "[i]f new counsel does not enter an appearance on JJS' behalf by November 6, 2023, Plaintiff may file an appropriate motion for JJS' failure to participate in this litigation." (Order [D.I. 58], Oct. 5, 2023.) JJS again failed to comply with a court order and failed to have new counsel enter an appearance. Because JJS is a corporation, it cannot appear in federal court *pro se*, *Erie Molded Plastics, Inc. v. Nogah, LLC*, 520 F. App'x 82, 84-85 (3d Cir. 2013) ("[a]s a general rule, if a corporation appears in federal court, it may do so only through licensed counsel") (citation omitted), and the case against JJS cannot proceed unless and until JJS retains counsel. By failing to secure new counsel, JJS has willfully prevented this case from moving forward, which warrants sanctions in the form of striking JJS' answer and counterclaim and entering default against JJS.

Moreover, even were the Court to consider the *Poulis* factors in deciding the instant motions for sanctions, the Court finds that such factors support striking JJS' answer and counterclaim and entering default on the claims against JJS. In analyzing the first *Poulis* factor, the Court considers "whether the party bears personal responsibility for the action or inaction[.]" *Adams v. Tr. of the New Jersey Brewery Employees' Pension Tr. Fund*, 29 F.3d 863, 873 (3d Cir. 1994). Here, because

11

JJS' conduct resulted in the withdrawal of its counsel and JJS has failed to retain new counsel, the Court finds that JJS "is clearly responsible for its recent conduct in this matter and cannot claim that the failure to prosecute resulted from the actions of its attorney." *Opta Sys., LLC v. Daewoo Elecs. A.*, 483 F. Supp. 2d 400, 404 (D.N.J. 2007). Consequently, the Court finds that the first *Poulis* factor weighs in favor of striking JJS' answer and counterclaim and entering default on the claims asserted against it.

    The Court next considers the prejudice suffered by Plaintiff and East Penn as a result of JJS' litigation conduct. *Poulis*, 747 F.2d at 868. The prejudice to other parties caused by the delay may include "whether the party's conduct has resulted in 'extra costs, repeated delays, and the need to file additional motions in response to the abusive behavior of the responsible party.'" *Chiarulli v. Taylor*, No. 08-4400, 2010 WL 1371944, at *3 (D.N.J. Mar. 31, 2010) (quoting *Huertas v. City of Phila.*, No. 02-7955, 2005 WL 226149, at *3 (E.D. Pa. Jan. 26, 2005), *aff'd*, 139 F. App'x 444 (3d Cir. 2005)), *report and recommendation adopted by* 2010 WL 166316, at *1 (D.N.J. Apr. 16, 2010). In addition, a party may be prejudiced if the adversary's conduct impedes "its 'ability to prepare effectively a full and complete trial strategy[.]'" *Id.* (quoting *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003)). Both Plaintiff and East

12

Penn assert that JJS' conduct, including its initial failure to cooperate with counsel that resulted in the first request to withdraw as counsel, as well as JJS' subsequent failure to participate in this litigation, has caused prejudice in the form of a one-year delay in litigation and increased attorneys' fees. (*See* Pl.'s Br. at p. 3; East Penn's Br. at p. 6.) Given JJS' failure to retain new counsel, Plaintiff and East Penn cannot prosecute their affirmative claims against JJS, nor can Plaintiff obtain final relief in connection with JJS' counterclaims, and the Court thus finds prejudice that weighs in favor of striking JJS' answer and counterclaims and entry of default on the claims against it.

Under the third *Poulis* factor, the Court considers whether the non-moving party has a history of dilatoriness. *Poulis*, 747 F.2d at 868. "'Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders.'" *Chiarulli*, 2010 WL 1371944, at *3 (quoting *Adams*, 29 F.3d at 874). JJS' history of dilatoriness is well-documented in the record. Its failure to communicate and cooperate with its attorneys resulted in two motions to withdraw as counsel, and JJS has since failed to comply with court orders requiring a JJS representative to attend a court hearing and requiring JJS to retain new counsel.

13

In addition, JJS has not responded to the instant motions or otherwise attempted to participate in the litigation. Consequently, the Court finds a history of dilatory conduct by JJS sufficient to support striking of JJS' answer and counterclaims and entry of default.

The Court next addresses the *Poulis* factor as to whether the conduct of JJS was willful or in bad faith. *Poulis*, 747 F.2d at 868. In *Nat'l Hockey League*, 427 U.S. at 640-41, the Supreme Court affirmed a district court's finding of bad faith, where the district court had found that "[a]fter seventeen months where crucial interrogatories remained substantially unanswered despite numerous extensions granted at the eleventh hour and, in many instances, beyond the eleventh hour, and notwithstanding several admonitions by the Court and promises and commitments by the plaintiffs, . . . the conduct of the plaintiffs demonstrates the callous disregard of responsibilities counsel owe to the Court and to their opponents" and "exemplif[ies] flagrant bad faith[.]" Alternatively, "'negligent behavior' or 'failure to move with . . . dispatch' — even if 'inexcusable' — will not suffice to establish willfulness or bad faith." *Chiarulli*, 2010 WL 1371944, at *3 (quoting *Adams*, 29 F.3d at 875-76).

Here, although the Court is unable to conclude from the record that JJS has acted in bad faith, the Court finds that

14

JJS' conduct in failing to comply with court orders and in causing delay in this case is willful. Indeed, as set forth above, JJS' president was expressly warned by this Court that JJS' failure to comply with an Order of the Court could result in JJS' answer and counterclaims being stricken. Therefore, JJS knew the potential consequences of failing to participate in this litigation but nonetheless ignored this Court's subsequent Orders. In the absence of a proffered justification for JJS' repeated failures, the Court concludes that JJS' conduct was willful and not merely negligent or inadvertent. The fourth *Poulis* factor thus supports sanctions in the form of striking JJS' answer and counterclaims and entering default.

Before turning to the effectiveness of other sanctions, the Court considers the *Poulis* factor related to the meritoriousness of the claims and defenses. *Poulis*, 747 F.2d at 868. "In *Poulis*, [the Third Circuit] stated that '[a] claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense.'" *Curtis T. Bedwell & Sons, Inc. v. Int'l Fid. Ins. Co.*, 843 F.2d 683, 696 (3d Cir. 1988)(quoting *Poulis*, 747 F.2d at 869-70). Here, the Court notes that JJS did not seek dismissal of the complaint or crossclaims pursuant to Federal Rule of Civil Procedure 12(b)(6), nor did it file a motion asserting that the complaint

15

is frivolous pursuant to Federal Rule of Civil Procedure 11. Likewise, Plaintiff did not file a motion to dismiss JJS' counterclaims. The Third Circuit has declined to "require the [] court to have a mini-trial before it can impose a default" and has held that "unless the pleading asserted a dispositive defense (or claim), the issue of meritoriousness would be neutral." *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 922 (3d Cir. 1992), *abrogation on other grounds recognized by White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334 (3d Cir. 2023). Thus, the Court finds at this time that this *Poulis* factor is neutral in the evaluation of sanctions.

Finally, under *Poulis*, the Court must consider the effectiveness of other, less drastic sanctions. *Poulis*, 747 F.2d at 868. "Dismissal must be a sanction of last, not first, resort." *Id.* at 869. In *Poulis*, the Third Circuit noted that the "most direct and therefore preferable sanction for the pattern of [] delay such as that which the district court encountered in this case would be to impose the excess costs caused by such conduct[.]" *Id.* In the instant case, JJS has been warned that failure to comply with the Court's orders could result in the imposition of sanctions. JJS' representative was also expressly advised by the Court that failure to comply with a court order could result in JJS' answer and counterclaims being stricken. Despite being warned of potentially dispositive sanctions, JJS

16

nonetheless refused to participate in this case, and therefore a less severe sanction in the form of attorneys' fees or costs is unlikely to encourage compliance with court orders. *See Brace*, 1 F.4th at 144 (district court did not abuse its discretion in striking summary judgment brief when "repeated orders to show cause, warnings, and threats of sanctions had not deterred counsel's chronic misbehavior"). Because this case cannot proceed unless and until JJS obtains counsel, which JJS has refused to do, the Court finds that lesser sanctions will not be effective in moving this case to resolution. The final *Poulis* factor, consequently, supports striking JJS' answer and counterclaims and entering default against it.

In conclusion, the Court finds that JJS' failure to retain new counsel has precluded the parties' ability to resolve this case on the merits, which alone warrants striking of JJS' answer and counterclaims and entering default against JJS. Furthermore, in evaluating the *Poulis* factors, the Court finds such sanctions are appropriate as the *Poulis* factors on balance support striking of JJS' answer and counterclaims and entry of default. JJS is responsible for its repeated failures to participate in this litigation and comply with court orders, which conduct the Court concludes is willful given the warnings that have been provided to JJS and JJS' failure to proffer an explanation of its efforts to retain new counsel. Moreover,

17

Plaintiff and East Penn have been prejudiced by the delay in resolving this case, and alternative lesser sanctions would be ineffective at this time. Although the Court does not determine herein the meritoriousness of JJS' defenses and counterclaims,[2] "one *Poulis* factor is not controlling." *Curtis T. Bedwell & Sons*, 843 F.2d at 696. As the remaining *Poulis* factors support striking JJS' answer and counterclaims and entering default, the Court finds such sanction appropriate for all of the reasons set forth above.

CONSEQUENTLY, for the reasons set forth above and for good cause shown,

**IT IS** on this **22nd** day of **January 2024**,

**ORDERED** that the motions of Plaintiff and East Penn [D.I. 61, 63] for sanctions shall be, and are hereby, **GRANTED**; and it is further

**ORDERED** that the answer and counterclaims of Defendant JJS [D.I. 17] shall be, and are hereby, **STRICKEN**; and it is further

**ORDERED** that the Clerk of the Court **shall enter default** against Defendant JJS on Plaintiff's claims, as well as the crossclaims of Defendant East Penn; and it is further

---

[2] To the extent the parties move for default judgment, any such motion shall include "a written submission justifying the damages sought and . . . the documentary evidence relied upon to prove damages." *Paniagua Grp.*, 183 F. Supp. 3d at 606.

**ORDERED** that to the extent any party seeks default judgment against JJS, it shall file a motion, on notice to JJS, in accordance with Federal Rule of Civil Procedure 55 after default has been entered. Any such motion shall include sufficient documentation to support any party's claim for damages.

s/ Ann Marie Donio  
ANN MARIE DONIO  
UNITED STATES MAGISTRATE JUDGE